UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAREN LEE IRWIN, | ) | Civil No.08CV460-JM(LSP) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| v. | ) | **DENYING IN PART PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| MICHAEL ASTRUE, Commissioner of | ) | **JUDGMENT** (Doc. No. 16); **GRANTING** |
| Social Security Administration, | ) | **IN PART AND DENYING IN PART** |
| | ) | **DEFENDANT'S CROSS-MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT** (Doc. No. 17); |
| | ) | **REMANDING CASE FOR FURTHER** |
| | ) | **PROCEEDINGS** |

Plaintiff Karen Lee Irwin (hereinafter "Plaintiff") challenges the final decision of Defendant Commissioner of Social Security (hereinafter "Defendant") to deny her application for social security benefits. The Appeals Council for the Social Security Administration denied Plaintiff's request for review and affirmed the Administrative Law Judge's decision, holding that Plaintiff was not disabled and could return to her previous job.

The parties have filed cross-motions for summary judgment. Pursuant to 28 U.S.C. §636(b)(a)(B) and Civil Local Rule 72.1(c)(1)(c) the motions were originally referred to Magistrate Judge Papas for a Report and Recommendation. The Court hereby withdraws the referral and finds these matters suitable for determination.  For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for summary judgment, grants in part and denies in part Defendant's cross-

1

motion for summary judgment, and remands the case for further proceedings as more fully set forth herein.

## I.   **PROCEDURAL HISTORY**

On July, 20, 2005, Plaintiff applied for disability insurance benefits.  [Transcript (hereinafter "Tr.") 79-88].  Plaintiff's application was denied, both initially and upon reconsideration, and Plaintiff requested a hearing.  (Tr. 44-57).  Two hearings were held before an Administrative Law Judge (hereinafter "ALJ").  Plaintiff and her attorney were present for both.  The first hearing took place on October 17, 2006, at which Plaintiff and vocational expert Gloria Lasoff testified.  (Tr. 433-457).  On March 8, 2007, a supplemental hearing was held during which independent medical expert Dr. Arvin Klein and vocational expert Connie Guillory testified.  (Tr. 458-471).  On March 30, 2007, the ALJ denied Plaintiff's applications finding that she was not disabled within the meaning of the Social Security Act. (Tr. 12-22).  On January 19, 2008, the Appeals Council denied Plaintiff's request for review of the matter. (Tr. 3-5).

Thereafter, Plaintiff filed a complaint for judicial review pursuant to 42 U.S.C. § 405(g).  On October  24, 2008, Plaintiff filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  On November 20, 2008, Defendant, through the United States Attorney, filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion. This matter is now before the Court.

## II.   **STATEMENT OF FACTS**

Plaintiff alleges disability as of March 22, 2003, due to degenerative disc disease of the lumbar spine, lung problems, chronic headaches, depression, osteoarthritis in her right hip, a torn meniscus in her right knee, hypertension, fibromyalgia, and herpes zoster/shingles. (Tr. 436-444).  Plaintiff was born May 12, 1946 and is currently unemployed. (Tr. 79, 89).  Plaintiff has a high school education and past work experience. (Tr. 89-95).  She last worked in October of 1998 as a receptionist. (Tr. 89).  As Plaintiff's "date last insured" was December 31, 2003, the relevant time period for this case is, therefore, March 22, 2003 through December 31, 2003.

1     Plaintiff visited a number of doctors during the relevant time period to address her various health

2 problems.  On March 30, 2003 Plaintiff visited Dr. Barry Elswick after she injured her eye doing yard

3 work. (Tr. 349).  Plaintiff reported little pain and Dr. Elswick found no evidence of laceration or

4 penetration nor any foreign body in the cornea. (Tr. 349-350).

5     On June 27, 2003, Plaintiff visited Physician's Assistant Zelkind complaining of sinus symp-

6 toms. (Tr. 348).  Plaintiff was assessed as having sinusitis and prescribed Amoxicillian and nasal spray.

7 (Tr. 348).  While taking Plaintiff's history, P.A. Zelkind noted that Plaintiff reported chronic urinary

8 tract infections as well as prior diagnosis of fibromyalgia. (Tr. 348).

9     On July 28, 2003, Plaintiff visited Dr. C. Sorrell complaining of foot fungus problems. (Tr. 346).

10 Dr. Sorrell prescribed her appropriate medication. (Tr. 346).  On September 4, 2003, Plaintiff again

11 visited Dr. Sorrell complaining of break-out blisters on her back. (Tr. 345). These blisters were later

12 determined to be herpes zoster also known as shingles. (Tr. 343).

13    Plaintiff visited an Urgent Care facility on November 8, 2003, again complaining of break-out

14 blisters. (Tr. 344).  During that visit, Plaintiff reported that there was not much pain associated with the

15 outbreak. (Tr. 344).  The Urgent Care notes state that this was the third outbreak in a year. (Tr. 344).

16    On December 26, 2003, Plaintiff had a mammogram which indicated scattered fibroglandular

17 elements in both breasts although there were no significant masses or calcifications and there was no

18 evidence of malignancy. (Tr. 339).

19    The remaining portion of the medical history illustrates medical treatment both prior to, and

20 following, the relevant time period. The file reveals many visits to Dr. Sorrell from 2002

21 through 2005.  These visits primarily involved visits for sinus related complaints, urinary tract

22 infections, shingles, foot pain, blood pressure, and various back and shoulder pains. (Tr. 139-379).  Dr.

23 Peggy Shoval became Plaintiff's primary treating physician in 2005 and Plaintiff frequently visited her

24 complaining of various back and shoulder pain, flu symptoms and sinus problems.

25 **III.    SUMMARY OF APPLICABLE LAW**

26    Title II of the Social Security Act (hereinafter the "Act"), as amended provides for payment of

27 insurance benefits to persons who have contributed to a program and who suffer from a physical or

28 mental disability. 42 U.S.C. § 423 (a) (1) (d) (1982 ed., Supp. III.)  To qualify for disability benefits

1   under the Act, an applicant must show that: (1) he or she suffers from a medically determinable

2   impairment that can be expected to result in death or that has lasted or can be expected to last for a

3   continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of

4   performing work that the applicant previously performed and incapable of performing any other

5   substantially gainful employment that exists in the national economy.  42 U.S.C. § 423 (d)(2)(A).  An

6   applicant must meet both of the above requirements in order to be "disabled" under this Act. Id.

7          The Secretary of the Social Security Administration has established a five-step sequential

8   evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920

9   (1986). If an applicant is found to be "disabled" or "not disabled" at any step in the analysis, there is no

10  need to proceed to the subsequent steps. Tacket v. Apfel, 180 F.2d 1094, 1098 (9th Cir. 1999) (citing

11  Federal Old-Age, Survivors and Disability Insurance (1950-1999), 20 C.F.R. § 404.1520 (1999)).  Step

12  one determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability

13  benefits are denied. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to step two,

14  which is a determination of whether the claimant has a medically severe impairment or combination of

15  impairments.  That determination is governed by the "severity regulation" at issue in this case.  The

16  severity regulation provides in relevant part:

17          If you do not have any impairment or combination of impairments which significantly limits
            your physical or mental ability to do basic work activities, we will find that you do not have a
18          severe impairment and are therefore, not disabled. We will not consider your age, education, and
            work experience. §§ 404.1520 (c),  416.920 (c).
19

20          The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do

21  most jobs." §§ 404.1521 (b), 416.921(b).  Such abilities and aptitudes include "[p]hysical functions such

22  as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for

23  seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions,

24  co-workers, and usual work situations"; and "[d]ealing with changes in routine work setting." Id.

25          If the claimant does not meet the requirements for a severe impairment or a combination of

26  impairments then the disability claim is denied at this level.  If there is a finding of severe impairment or

27  combination of impairments then the analysis goes to the third step.  This step determines whether the

28  impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are

4

so severe as to preclude substantial gainful activity. §§ 404.1520 (d), 416.920(d); 20 CFR pt. 404, subpt.

P, App. 1 (1986).  If the impairment meets or equals one of the listed impairments, the claimant is

presumed to be disabled.  If the impairment does not fall on the list, the claimant is not presumed to be

conclusively disabled and the evaluation proceeds to the fourth step.  At step four, a decision is made as

to whether the impairment prevents the claimant from performing work she has performed in the past.  If

the claimant is able to perform her previous work, then she is not disabled under the Act. §§ 404.1520

(e), 416.920 (e).  If it is found that the claimant can not return to her previous work, then the evaluation

proceeds to the fifth step which determines whether she is able to perform other work in the national

economy in view of her age, education, and work experience.  The claimant is entitled to disability

benefits only if she is not able to perform other work. §§ 404.1520 (f), 416.920 (f).  The claimant bears

the burden of proving steps one through four, consistent with the general rule that "[a]t all times, the

burden is on the claimant to establish [her] entitlement to disability insurance benefits." Tidwell v.

Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

## IV.    JUDICIAL STANDARD OF REVIEW

The decision to deny benefits will be disturbed only if it is not supported by substantial evidence

or it is based on legal error. Brawner v. Secretary of Health & Human Services, 839 F.2d 432, 433 (9th

Cir. 1987).  The term "substantial evidence" refers to relevant evidence that a reasonable person might

find adequate to support the ALJ's conclusion, considering the record as a whole. See Richardson v.

Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence means more than a mere scintilla but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "To determine whether

substantial evidence supports the ALJ's decision, the court will review the administrative record as a

whole, weighing both the evidence that supports the ALJ's decision and that which detracts from the

ALJ conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).   The ALJ is responsible for

determining and resolving conflicts in medical testimony. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.

1984).  The ALJ is likewise responsible for determining and resolving ambiguities. Id. In reaching his

findings, the ALJ is entitled to draw inferences logically flowing from the evidence. Beane v. Richard-

1  son, 457 F.2d 758 (9th Cir.)   The court must uphold the ALJ's decision where the evidence is suscepti-

2  ble to more than one rational interpretation. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

3  **V.    DISCUSSION**

4       Plaintiff contends that the ALJ erred  (1) by finding that Plaintiff's mental impairment was non-

5  severe, (2) by failing to give full consideration to statements made by third parties on Plaintiff's behalf,

6  (3) by implicitly finding that Plaintiff could only perform part-time work in assessing her residual

7  functional capacity (hereinafter "RFC"), (4) by failing to adequately support his rejection of the opinion

8  of Plaintiff's treating physician, and (5) by failing to consider all of Plaintiff's impairments in determin-

9  ing her RFC.

10 **A.    The ALJ Properly Determined Plaintiff Did Not Suffer from a Severe Mental Impairment**

11      Plaintiff maintains the ALJ erred when he concluded that her mental condition was not severe.

12 (Plaintiff's Memorandum of Points and Authorities, p. 4-8).  Specifically, she contends substantial

13 evidence in the record does not support the ALJ's conclusion and that the ALJ applied the incorrect

14 legal standard in determining that Plaintiff did not have a severe mental impairment.

15      In response, Defendant maintains the ALJ properly found that Plaintiff's mental impairment was

16 not severe based on the lack of relevant medical records for the adjudication period, opinion of the

17 medical expert Dr. Klein that Plaintiff did not suffer from a mental impairment during the relevant time,

18 and Plaintiff's testimony failed to include any evidence that she suffered from any specific disabling

19 limitation due to her depression. (Defendant's Memorandum of Points and Authorities, p. 4-5).

20      ***Severity Requirement***

21      An impairment is not severe if it does not significantly limit a claimant's physical or mental

22 abilities to do basic work activities. 20 C.F.R. § 404.1521.  The United States Supreme Court has

23 recognized that including the severity inquiry at the second stage of the evaluation process permits the

24 Secretary of the Social Security Administration to identify efficiently those claimants whose impair-

25 ments are so slight that they are not likely to be found disabled even if the individual's age, education,

26 and experience are considered. Bowen v. Yuckert, 482 U.S. 137 (1987).  However, an overly stringent

27 application of the severity requirement violates the statute by denying benefits to claimants who do meet

28 the statutory definition of disabled. Id.  Therefore the sequential evaluation process can be terminated at

1  step two only in those cases where there is no more than a minimal effect on the claimant's ability to do

2  work. Id.  An impairment can be considered as not severe only if it is a slight abnormality which has

3  such a minimal effect on the individual that it would not be expected to interfere with the individual's

4  ability to work, irrespective of age, education, or work experience. Jones v. Heckler, 597 F. Supp. 210,

5  211 (N.D. Cal. 1984).

6        When an applicant alleges mental impairment, the Social Security Regulations require the Social

7  Security Administration to follow a procedure in evaluating the impairment's severity.  This procedure

8  requires the ALJ to complete the OHA Psychiatric Review Technique Form. 20 C.F.R. § 416.920a(d).

9  The form allows the ALJ to record the pertinent findings regarding an applicant's alleged impairment.

10  If the ALJ determines that a mental impairment exists, the procedure requires the degree of functional

11  loss resulting from the impairment be rated. 20 C.F.R.§ 416.920a(b)(3).  Based upon that information,

12  the ALJ must determine whether the impairment is "severe." 20 C.F.R.§ 416.920a(c).

13        ***Analysis***

14        The ALJ found Plaintiff had the following severe impairments during the relevant time period:

15  "subject complaints of back pain; headaches; morbid obesity; hypertension under control." [Tr. 17,

16  citing 20 C.F.R. § 404.1520(c)].  In doing so he stated "(p)rior to December 31, 2003, the record

17  establishes no severe mental impairment.  While there is some reference to complaints of depression

18  (Exhibit B7F), the claimant was not referred for any mental health evaluation.  She did not have any

19  regular or ongoing mental health treatment.  At most, the record establishes a nonsevere depressive

20  disorder."  (Tr. 18).

21        Plaintiff offers the conclusory sentence "(t)he ALJ applied the incorrect legal stand in determin-

22  ing that claimant did not have a severe mental impairment."  (Plaintiff's Memorandum of Points and

23  Authorities, p. 4, l. 11-12).  However, it is unclear as to what is her basis for this claim.  Plaintiff fails to

24  explain why she contends the ALJ applied the incorrect legal standard or offer any proof to support this

25  broad allegation.

26        Plaintiff also claims that the evidence submitted, identified in the ALJ's report as Exhibit B7F,

27  contains "substantial evidence supporting the presence of a mental disorder" and that the ALJ incor-

28

1   rectly denied benefits at stage two of the evaluation.[1]   (Plaintiff's Memorandum of Points and

2   Authorities, p. 11-13).

3            As the ALJ correctly observed, the record does not contain any indication she suffered from a

4   severe mental impairment during the relevant time period.  Although Plaintiff is now critical of the

5   ALJ's conclusion her mental condition was not severe, this was not an impairment for which she sought

6   Social Security benefits.  Plaintiff did not allege depression as a disabling condition when applying for

7   benefits.  (Tr. 91-92).  In fact, in response to the question as to what "illnesses, injuries or conditions...

8   limit your ability to work" Plaintiff replied only "back, urinary infections, lung problem" (sic).  (Tr. 91).

9   Moreover, during her testimony at the hearing there was no mention of depression other than a reference

10  to taking Pamprin which Plaintiff explained could be used as a pain medication and also as an anti-

11  depressant. (Tr. 442-443).  Plaintiff was questioned by both the ALJ and her attorney but did not testify

12  as to any disabling limitations resulting from depression.  (Tr. 439-452).

13           Furthermore, as noted by the ALJ, Plaintiff's medical records indicate she was not evaluated or

14  treated for mental health concerns during the relevant time period.  Although Plaintiff alleges the record

15  contains "substantial evidence supporting the presence of a severe mental disorder" the medical records

16  upon which Plaintiff relies are dated prior to Plaintiff's alleged onset of disability on March 22, 2003.

17  (Tr. 79, 92, 339-407).  As such, they do not bear "directly and substantially on the matter in dispute."

18  Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001).  In fact, the evidence had already been evaluated

19  and rejected when Plaintiff was conclusively found to be not disabled in a previous ALJ decision dated

20  March 21, 2003, which is not at issue in this action.  (Tr. 29-41).[2]

21

22

23  [1]  Exhibit B7F is a collection of medical records that reflect some of Plaintiff's medical history and exists with the
    administrative record at Tr. 339-407.  Included is an opinion by Dr. Armstrong stating that he believes Plaintiff

24  could have an underlying depressive disorder, however there is no formal diagnosis of depression nor any
    evidence of ongoing treatment for depression.

25
    [2]  Plaintiff made an earlier disability claim that was denied on March 31, 2003 by Administrative Law Judge Peter

26  J. Valentino. (Tr. 41). Judge Valentino found that Plaintiff's medically determinable severe impairments did not
    prevent her from performing her past relevant work, as well as a significant number of other jobs in the national

27  and regional economy. (Tr. 41). Judge Valentino considered and rejected Plaintiff's claim that she suffered from a
    severe mental impairment. (Tr. 34). In regards to her depression, he found no showing of more than a slight

28  limitation of any aspect of work-related mental functioning. (Tr. 34).

Thus, a careful review of Plaintiff's medical records and the record as a whole is consistent with the ALJ's conclusion that Plaintiff did not have a severe mental impairment during the relevant time period.  Although Plaintiff did not claim her mental condition entitled her to benefits, the ALJ weighed the very limited evidence presented and ultimately found no substantiation for a finding of severe mental impairment.  Therefore, the ALJ did not err in his evaluation on this issue.

//

//

//

**B.**     **The ALJ Gave Proper Consideration to Statements Made by Third Parties on Plaintiff's Behalf**

Plaintiff alleges that the ALJ erred in not giving full consideration to the statements made by third parties on her behalf. (Plaintiff's Memorandum of Points and Authorities, p. 9).  Both Karen LaChance, Plaintiff's friend and neighbor, and Norma Steel, a friend, submitted letters on her behalf. (Tr. 131-133).   LaChance wrote concerning her opinion of Plaintiff's degenerative condition including her belief that the medications Plaintiff was taking caused her to be dizzy and drowsy. (Tr. 131). Steel's letter details the illnesses Plaintiff previously described to Steel and the fact that beginning in October 2006 Plaintiff could no longer accompany her on their weekly walks around the neighborhood.

Defendant argues that the ALJ properly addressed the third party statements and acted consistent with case law and the Social Security Regulations when he chose to give greater weight to the medical expert opinion of Dr. Klein than to the opinions offered by LaChance and Steel concerning the severity of Plaintiff's condition. (Defendant's Memorandum of Points and Authorities, p. 5).

### *Standard for Evaluating Third Party Statements*

Social Security Regulations 20 C.F.R. § 416.913 states that the ALJ may consider third party statements as evidence regarding the severity of Plaintiff's impairment.  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993); <u>Bruce v. Astrue</u>, –F.3d –, 2009 WL 539945 (March 5, 2009) (the ALJ is "required to consider and comment upon competent lay testimony").

### *Analysis*

The ALJ gave proper consideration to the statements made by third parties on Plaintiff's behalf. He acted consistent with both Social Security Regulations and case law in identifying specific reasons why he chose not to give significant weight to the testimony of these third parties. The ALJ's report indicates that  he did consider the letters in determining the severity of Plaintiff's impairments but that he chose to give greater weight to the professional opinion of the Medical Expert, Dr. Klein who opined that Plaintiff's conditions did not bar her from performing her past work. (Tr. 461-466).  Unlike the ALJ in Dodrill who apparently  "dismissed all the lay testimony solely because he found the claimant was not credible," the ALJ in this case specifically stated why he gave more weight to the medical expert than to the opinion of Plaintiff's friends.  Dodrill, 12 F.3d at 919.

The rejection of Steel's letter is clear and consistent with Social Security Regulations.  Of Steel's letter he stated that her statement "does not support the level of impairment that the claimant alleges during the period of adjudication." (Tr. 21).  The ALJ did consider Steel's letter in determining the severity of the Plaintiff's impairments, but found that the letter supported a conclusion that Plaintiff's condition was less severe than she claimed. Steel's letter contradicted, or at least undermined, Plaintiff's claims by suggesting that she and Plaintiff continued to take walks until October of 2006, suggesting that Plaintiff's impairments were not as severe as she claimed until well past the period in question.[3]  It was proper for the ALJ to give greater weight to Dr. Klein's professional opinion which was based on the record as a whole that Plaintiff's alleged impairments did not bar her from being able to perform her past relevant work. (Tr. 461-466).

The ALJ also detailed why he did not give great weight to the opinion letter by LaChance stating that LaChance "fail[ed] to identify what symptoms and limits the claimant had during the period in adjudication." (Tr. 21).  LaChance's letter appears to be based in part on direct observation of the Plaintiff's condition and in part on complaints made by Plaintiff to LaChance.[4] It is the job of the ALJ to

---

[3]  The Steel letter states in part, "We began walking for about an hour several times each week in our neighborhood in Ramona; however, due to the progression of her disc disease, we have not walked since the beginning of October, 2006." (Tr. 132).

[4]  The LaChance letter states, "I have personally witnessed [Plaintiff's] declining health in the last 9 or 10 years from fibromyalgia, recurrent migraine headaches and back problems."  While this suggests LaChance has had an opportunity to witness the severity of Plaintiff's condition, the letter goes on to say that Plaintiff "has stated on may occasions that her symptoms prevent her from sleeping at night and she is unable to sit, stand or walk for

1  weigh the evidence and make credibility determinations and his decision will not be disturbed unless it

2  is based on legal error or is not supported by substantial evidence. Brawner 839 F.2d at 433.  Under 20

3  C.F.R. § 416.913 the ALJ may consider testimony from third parties and it appears that the ALJ did just

4  that, he considered LaChance's letter and determined it had offered little weight to Plaintiff's claim.[5]

5         Under Dodrill and 20 C.F.R. § 416.913 the ALJ is under no obligation to give weight to the

6  testimony of third parties if he determines their testimony lacks credibility, he is merely required to give

7  legitimate reasons for rejecting the opinions. Here, the ALJ evaluated the testimony of both Ms. Steel

8  and Ms. LaChance and determined that their testimony was not entitled to great weight and detailed his

9  reasoning. He determined that Steel's letter actually undermined Plaintiff's claim and that LaChance's

10 letter did not clearly identify the limitations Plaintiff faced as a result of her alleged impairments. It is

11 the ALJ's job to weigh evidence and he did not err simply because he decided to give little weight to the

12 third parties' testimony.

13 **C.     The ALJ Erred in His Analysis of Plaintiff's RFC Because He Failed to Discuss Her Ability
14         to Perform Sustained Work Activities**

15        Plaintiff claims the ALJ's conclusion regarding her RFC does not support his finding she could

16 perform her past relevant work.  (Plaintiff's Memorandum of Points & Authorities, p. 13-14).  The

17 Court concurs, however, for reasons other than those articulated by Plaintiff.

18        ***Standard for RFC***

19        RFC is an assessment of an individual's ability to do sustained work-related physical and mental

20 activities in a work setting on a regular and continuing basis.  Social Security Ruling 96-8p.  A 'regular

21 and continuing basis' is explicitly defined to mean "8 hours a day, for 5 days a week, or an equivalent

22 work schedule."  Id.

23        ***Analysis***

24

25

26 more than 30-60 minutes without becoming completely exhausted." (Tr. 131).

27 [5]  Note that even if the ALJ improperly discounted LaChance's statement, there is substantial evidence in the
   record to support his findings that Plaintiff's impairments were not severe.  LaChance's letter would not have, on
28 its own, established that a disability existed, it could only speak to the severity or the impairment. 20 C.F.R. §
   416.913.

1    The ALJ found Plaintiff had the RFC to "lift or carry 15 pounds frequently and 35 pound (sic)

2    occasionally; occasional bending, stooping, crouching, crawling, kneeling, balancing and climbing

3    ramps and stairs; and avoid climbing ropes, ladders and scaffolds."  (Tr. 19).

4    Plaintiff claims the ALJ's finding accounted for less than eight hours per day and was, therefore,

5    tied to less than full-time employment. (Plaintiff's Memorandum of Points & Authorities, p. 13).

6    Defendant counters that although the ALJ did not specify the precise amount of sitting, walking and

7    standing Plaintiff could sustain it is unreasonable to infer he believed she was not capable of full-time

8    employment, particularly in consideration of his deference to the opinion of Dr. Klein.  (Defendant's

9    Memorandum of Points & Authorities, p. 5-6).

10    Both parties are wrong.  The role of the Court is not to infer the basis for an RFC finding.  The

11    Social Security Administration requires "(i)n assessing RFC, the adjudicator <u>must</u> discuss the individ-

12    ual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing

13    basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum

14    amount of each work-related activity the individual can perform based on the evidence available in the

15    case record." SSR 96-8p (emphasis added).

16    As Defendant highlights, the ALJ gave great weight to Dr. Klein's opinion.  (Tr. 21).  Dr. Klein

17    testified Plaintiff can lift 15 pounds frequently and 35 pounds occasionally and sit, stand and walk for 6

18    hour periods each.  (Tr. 465).  Although the ALJ weighted Dr. Klein's opinion more heavily than the

19    treating physician because he "based his opinion regarding the claimant's maximum sustained work

20    capacity on the evidence for the period in adjudication" the Court can not extrapolate from this

21    statement the ALJ intended to adopt Dr. Klein's assessment of Plaintiff's physical limitations in whole,

22    as Defendant posits.

23    The ALJ failed to discuss Plaintiff's ability to perform sustained work activities, although he was

24    required to do so.  He did not describe the maximum amount of each work related activity Plaintiff can

25    perform.[6]  Thus, the Court concludes that the ALJ failed to fully assess Plaintiff's RFC and remands this

26    claim for further consideration.

27

28    [6]  The Court observes that for some unexplained reason the ALJ's RFC finding does not mention sitting, standing, or walking, even though Plaintiff does not dispute whether she can perform them for limited periods of time.

1    **D.      The ALJ Properly Addressed the Opinions of Dr. Shoval**

2          Plaintiff claims that the ALJ did not properly reject Dr. Shoval's opinion of Plaintiff's limita-

3    tions with specific and legitimate reasons based upon substantial evidence in the record. (Plaintiff's

4    Memorandum of Points & Authorities, p. 15).

5                    ***Standard for Accepting or Rejecting the Opinion of a Treating Physician***

6          A treating physician's medical opinion is entitled to special weight largely because a treating

7    physician is "employed to cure and has a greater opportunity to know and observe the patient as an

8    individual." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir.1987).[7]   However, the treating physician's

9    opinion on the ultimate issue of disability is not necessarily conclusive.  <u>Magallanes v. Bowen</u>, 881 F2d

10   747, 751 (9th Cir. 1989).  In determining a claimant's disability, the ALJ may disregard the treating

11   physician's opinion whether or not that opinion is contradicted. <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408

12   (9th  Cir. 1986).  In order to disregard the opinion of a treating physician, the ALJ must cite specific,

13   legitimate reasons for doing so that are based on substantial evidence in the record. <u>Murray v. Heckler</u>,

14   722 F.2d 499, 502 (9th Cir. 1983).

15         In assessments dated October 10, 2006 and November 6, 2006, Dr. Shovall opined Plaintiff

16   suffered from chronic low back pain, lumbar disc disease, fibromyalgia, shoulder impingement, obesity

17   and neck pain which rendered her capable of only occasionally lifting 10 pounds, standing for 10 minute

18   periods, walking for 1 hour, and sitting for 30 minutes.  (Tr. 239-244 & 409-414).

19         The ALJ found Dr. Shoval's opinion was inconsistent with the medical records from the relevant

20   time period of March - December 2003.  (Tr. 20).  The limited treatment notes from that time period are

21   nearly devoid as to any significant disabling symptoms due to any condition.  Tr. 339-352.  In March

22   2003, Plaintiff was prescribed eye drops after being poked in the eye by a leaf during yard work (Tr.

23   349-352) and in June 2003 she received nasal spray and Amoxicillin after experiencing sinus problems

24   (Tr. 348).  She was treated for transient dermatological conditions (Tr. 347) and instructed to take over-

25

26   [7]  Ninth Circuit case law distinguishes among the opinions of three types of physicians: "(1) those who treat the
     claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and
27   (3) those who neither examine nor treat the claimant (nonexamining physicians).  <u>Lester v. Chater</u>, 81 F.3d 821,
     830 (9th Cir. 1996).       The Court questions whether the opinion of Dr. Shovall, who according to Plaintiff's
28   testimony did not treat her during the relevant time period, is entitled to the deference of a treating physician.  (Tr.
     455).  However, this question was not raised by Defendant.  Therefore, the Court will afford Plaintiff the benefit
     of the doubt and evaluate the ALJ's findings on the assumption Dr. Shovall is a treating physician.

13

1   the-counter medication for a foot fungus problem in July 2003 (Tr. 346).  Later she was treated for an

2   episode of shingles in September 2003 (Tr. 345), a rash in November 2003 (Tr. 344), and symptoms of

3   dry eye in December 2003 (Tr. 340-341).  As the ALJ articulated, the evidence of the record does not

4   establish Plaintiff's limitations are due to fibromyalgia, or even establish that impairment.[8]  (Tr. 20).

5   Furthermore, the ALJ correctly noted that while Dr. Shoval premised limitations due to degenerative

6   disc disease, "no such changes were indicated by any diagnostic study nor was there clinical evidence of

7   the same prior to December 2003."  Id.  The ALJ concluded, therefore, that Dr. Shoval's opinion was

8   too extreme for the period in issue.  Id.

9         The ALJ further found the opinion was too remote from the relevant time period and observed

10   "what is not clear from Dr. Shoval's opinion is the claimant's functional capacity three years prior to the

11   time that she wrote the report."  Id.  In fact, her assessments are based on treatments spanning from 1999

12   - 2006 and 2003 - 2006, and provide no insight as to Plaintiff's capacity during the relevant time period.

13   (Tr. 239-244 & 409-414).

14         As a tangential claim, Plaintiff argues that the ALJ rejected uncontroverted medical evidence

15   that Plaintiff suffered degenerative disc disease, citing to a report captioned "Request for Medical

16   Advice" dated January 24, 2006.[9]  The document contains a chronological discussion of Plaintiff's

17   medical concerns and references a lumbar x-ray performed in December 1997 and an MRI in June 1998,

18   both of which revealed degenerative disc disease.  (Tr. 235-236).

19         Plaintiff's contention of uncontroverted medical evidence is suspect as the actual records from

20   these procedures are not contained in the record.  Furthermore, these procedures were performed long

21   before Plaintiff's alleged onset of disability on March 22, 2003.  (Tr. 79, 92).  Even if the reports were

22   part of the record they do not address the relevant time period and, therefore, do not bear "directly and

23   substantially on the matter in dispute."  Bruton, 268 F.3d at 827.  In fact, they relate to a time period in

24   which Plaintiff was conclusively found to be not disabled in the review of her previous allocation for

25   benefits dated March 21, 2003, which is not at issue in this action.  (Tr. 29-41).  Thus, the Court does

---

27 [8]  The records for the relevant time period contain a passing reference to fibromyalgia in June 2003, however, this

28 was an account by Plaintiff of her medical history and not a condition for which she sought treatment.  Tr. 348.

[9] Defendant does not specifically respond to this argument.

1  not find the record contained uncontroverted medical evidence that was inappropriately rejected by the

2  ALJ.

3  **E.      The ALJ's Failure to Consider All Plaintiff's Relevant Impairments in Assessing her RFC**

4          Plaintiff alleges the ALJ failed to properly consider the effects of her obesity, herpes zoster

5  (shingles), fibromyalgia, asthma, depression, osteoarthritis of the right hip, and torn meniscus of the

6  right knee on Plaintiff's RFC.  Defendant counters there is no merit to this claim and that the ALJ

7  properly considered all Plaintiff's relevant impairments. (Defendant's Memorandum of Points and

8  Authorities, p. 7).

9  //

10  //

11  //

12          ***Residual Functional Capacity and Multiple Impairments***

13          Social Security Ruling 96-8p mandates an RFC assessment be based on all relevant evidence in

14  the case record including

15          •       Medical history,
          •       Medical signs and laboratory findings,
16          •       The effects of treatment, including limitations or restrictions imposed by the
                  mechanics of treatment (e.g., frequency of treatment, duration, disruption to
17                  routine, side effects of medication),
          •       Reports of daily activities,
18          •       Lay evidence,
          •       Recorded observations,
19          •       Medical source statements,
          •       Effects of symptoms, including pain, that are reasonably attributed to a
20                  medically determinable impairment,
          •       Evidence from attempts to work,
21          •       Need for a structured living environment, and
          •       Work evaluations, if available.

22

23          In assessing RFC, the adjudicator must consider only limitations and restrictions attributable to

24  medically determinable impairments. SSR 96-8p.  It is incorrect to find that an individual has limitations

25  or restrictions beyond those caused by her medical impairment(s) including any related symptoms, such

26  as pain, due to factors such as age and body habitus. Id.  While the adjudicator must consider limitations

27  and restrictions imposed by all of an individual's impairments, even those that are not severe, when

28  there is no allegation of a physical or mental limitation or restriction of a specific functional capacity,

1   and no information in the case record that there is such a limitation or restriction, the adjudicator must

2   consider the individual to have no limitation or restriction with respect to that functional capacity. Id.

3          ***Analysis***

4          The ALJ found Plaintiff's obesity was a severe and medically determinable impairment.  (Tr.

5   17).  As such, he was required to consider it when assessing Plaintiff's RFC.  SSR 96-8p.

6          The record contains documentation regarding the functional limitations caused by Plaintiff's

7   recurring herpes zoster (shingles) outbreaks that are not discussed in the ALJ's findings.  Plaintiff

8   reported having three outbreaks in 2003 which lasted about a week each. (Tr. 451-452).  Plaintiff

9   testified that during her outbreaks her left leg and back would ache and she would be unable to lift

10  anything due to the soreness.  This claim is not substantiated by the record. (Tr. 451-452).  Citing

11  Barnhart v. Walton, 535 U.S. 212, 214 (2002), Defendant contends this evidence falls short of

12  demonstrating Plaintiff's inability to work for a continuous twelve month period.  However, this

13  standard is not the appropriate test for determining whether the ALJ considered all relevant evidence in

14  the record when assessing RFC.

15         The ALJ's findings regarding Plaintiff's RFC do not evaluate her functional limitations resulting

16  from her medical impairments, including specifically her obesity or herpes zoster (shingles).  Defendant

17  again cites to the ALJ's deference to Dr. Klein's opinions.  However, as explained above, the Court can

18  not infer from this deference that the ALJ intended to adopt Dr. Klein's opinions of Plaintiff's physical

19  limitations in their entirety, whether stated or not.

20         In sum, the ALJ failed to discuss the limitations and restrictions imposed by all of Plaintiff's

21  impairments, including those that are not severe.  Thus, the Court concludes that the ALJ failed to fully

22  assess Plaintiff's RFC and remands for further consideration.

23  **VI.   CONCLUSION**

24         Based on the foregoing, the Court grants Defendant's motion for summary judgment, and denies

25  Plaintiff's motion for summary judgment, on claims that the ALJ erred (1) in finding that Plaintiff did

26  not have a severe mental impairment, (2) in failing to give full consideration to lay testimony, and (3) in

27  rejecting the testimony of treating physician Dr. Shoval.  The Court grants Plaintiff's motion for

28  summary judgment, and denies Defendant's motion for summary judgment, on claims that the ALJ erred

1  (1) in failing to discuss Plaintiff's abilities to perform sustained work activities, and (2) in failing to

2  consider all relevant impairments in assessing the RFC.   The Court remands the case to the ALJ for

3  further consideration of the latter two claims.

4          **IT IS SO ORDERED.**

5  DATED:  March 27, 2009

6  _____

7                              Hon. Jeffrey T. Miller
                               United States District Judge

8  cc:                 All parties